UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 13-20122-CIV-HUNT

LANDMARK EQUITY FUND II, LLC

      Plaintiff,

v.

RESIDENTIAL FUND 76, LLC,
REAL ESTATE MORTGAGE INVESTMENT
CORPORATION [REMIC],
CITIGROUP GLOBAL MARKETS REALTY
CORPORATION

      Defendants.

_____/

## ORDER ON DEFENDANTS RESIDENTIAL FUND 76 LLC AND REAL ESTATE MORTGAGE INVESTMENT CORPORATION'S MOTION TO DISMISS

This matter is before this Court on Defendants Residential Fund 76 LLC ("RF76")

and Real Estate Mortgage Investment Corporation's ("REMIC") (collectively, the

"REMIC Defendants") Motion to Dismiss Second Amended Complaint for Lack of

Subject-Matter Jurisdiction, filed on October 15, 2013.  ECF No. 79.[1]  On May 30, 2012,

the parties consented to proceed in this case before the undersigned United States

Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  ECF No. 47.  Having carefully

reviewed the REMIC Defendants' Motion to Dismiss, the Response and Reply thereto,

the entire case file, and applicable law, and being otherwise fully advised in the

premises, the REMIC Defendant's Motion to Dismiss for Lack of Subject-Matter

_____

[1] The REMIC Defendants' Motion to Dismiss includes arguments against personal jurisdiction and failure to state a claim upon which relief can be granted; however, as more fully set forth herein, this Court does not reach those issues.

Jurisdiction is hereby GRANTED, and Counts I, II, and IV of Plaintiff's Second Amended Complaint against the REMIC Defendants are DISMISSED for lack of subject-matter jurisdiction, as fully set forth below.

BACKGROUND

On June 27, 2012, Plaintiff Landmark Equity Fund II LLC ("LEF II") filed its original complaint against the REMIC Defendants alleging various claims involving contracts for the purchase of pools of residential loans.  Landmark Equity Fund II, LLC v. Residential Fund 76, No. 12-CV-22379-MGC, at ECF No. 1.  Plaintiff pleaded diversity jurisdiction.  Id.  On December 14, 2012, Plaintiff amended its complaint by, inter alia, adding Citigroup Global Markets Realty Corporation ("Citigroup") as a defendant.  Id. at ECF No. 16.  On December 21, 2012, the REMIC Defendants filed a Motion to Dismiss for lack of jurisdiction and for failure to state a claim.  Id. at ECF No. 20.  On January 8, 2013, Plaintiff filed a notice of voluntary dismissal without prejudice, and the Honorable Marcia G. Cooke entered an order dismissing the case on January 11, 2013.  Id. at ECF No. 21, 23.

On the same day that the original case was dismissed, January 11, 2013, Plaintiff refiled the action in this Court alleging the same claims against Defendants— seeking specific performance or, in the alternative, monetary damages—and continuing to allege diversity jurisdiction.  ECF No. 1.  Plaintiff has subsequently amended its complaint twice; the most recent being Plaintiff's Second Amended Complaint (the "SA Complaint"), filed on September 25, 2013.  ECF No. 65.  Plaintiff's SA Complaint asserts the following counts: (1) Specific Performance and Related Relief against the REMIC Defendants; (2) Breach of Contract and Related Relief against the REMIC

Defendants; (3) Specific Performance of Third-Party Contract and Related Relief against Citigroup; and (4) Breach of Implied Contract/Quasi Contract and Related Relief against the REMIC Defendants and Citigroup.  ECF No. 65 at 10–18.  Plaintiff's SA Complaint is based on the pleaded facts.

**Plaintiff's SA Complaint**

On or about June 7, 2011, Defendant Citigroup and RF76 executed a Mortgage Loan Sale Agreement (the "Citigroup Contract") for the sale of real estate loans from Citigroup to RF76.[2]  ECF No. 65 at 4.  Plaintiff attached a copy of the Citigroup Contract to its SA Complaint.  ECF No. 65 Attach. 2.  Plaintiff asserts that "upon information and belief, the Defendants negotiated and/or executed the Citigroup Contract based upon and/or in reliance of the simultaneous sale of these same loans to Landmark Financial Services, LLC, [sic] Plaintiff's predecessor in interest."  ECF No. 65 at 4.  It is clear from the record that Plaintiff's counsel erred in identifying Plaintiff's predecessor in interest as Landmark Financial *Services* LLC instead of Landmark Financial *Solutions* LLC (hereinafter "LFS").  See ECF No. 65 Attach. 3 (contract assigning loans from RF76 to LFS).

On or about June 8, 2011, LFS purchased a pool of real estate loans from RF76, including at least ten loans secured by real property in Florida, for $1,897,214.37 (the "First RF76 Contract").  ECF No. 65 at 6.  Plaintiff attached a precise copy of the First RF76 Contract to its SA Complaint.  ECF No. 65 Attach. 3.  In the preamble, it was represented that RF76 was "currently under contract to purchase and become the

---

[2] Though Plaintiff states that the Citigroup Contract was between the REMIC Defendants and Citigroup, the copy of the Citigroup Contract attached to the Complaint represents that Defendant RF76 was the sole beneficiary.  ECF No. 65 Attach. 2.  Plaintiff's position is that REMIC and RF76 are alter egos; but, REMIC maintains that is was not a party to the Citigroup Contract.  For purposes of this Order, this Court will refer to the nature of the contracts based on their express terms.

Owner (as defined herein) and servicer of record for certain Mortgage Loans (as defined herein), and in its capacity as Owner, has the power to sell, transfer, assign and convey the Mortgage Loans to Buyer."  ECF No. 65 Attach. 3.  The preamble further states that RF76 "is under contract to acquire a specific number of Mortgage Loans from a third-party seller, Citiglobal based upon a written contract to acquire such Mortgage Loans and [LFS] wishes to acquire a specific portion of those Mortgage Loans from [RF76] concurrent with [RF76's] acquisition thereof."  ECF No. 65 Attach. 3.

On or about June 23, 2011, LFS purchased a second pool of real estate loans from RF76 for real property in various states, including at least twenty-one loans secured by properties in Florida, for $694,659.16 (the "Second RF76 Contract").  ECF No. 65 at 6–7.  Plaintiff attached a precise copy of the Second RF76 Contract to its SA Complaint.  ECF No. 65 Attach. 4.  The preamble states that "[RF76] is the Owner . . . and servicer of record for certain Mortgage Loans . . . or the servicing agent and attorney-in-fact of the Owner of the Mortgage Loans with, in its capacity as Managing Member, the power to sell transfer, assign and convey the Mortgage Loans on behalf of the Owner."  ECF No. 65 Attach 4.

After the execution of the RF76 contracts, Plaintiff claims that RF76 did not provide certain required assignments to LFS.  ECF No. 65 at 7.  Plaintiff alleges that LFS repeatedly contacted the REMIC Defendants, orally and in writing, regarding the missing assignments, which the REMIC Defendants promised to, but did not, provide.  ECF No. 65 at 8.  On April 24, 2012,[3] after months of correspondence between the

---

[3] Plaintiff's Complaint states that the date is April 18, 2014, but then provides a citation to its attached "Exhibit 11," which is identical to "Exhibit 12," which shows a response from the REMIC Defendants on April 24, 2014.

REMIC Defendants and Plaintiff regarding the missing assignments, the REMIC Defendants responded, citing issues with obtaining the missing assignments from Defendant Citigroup and issues with obtaining recorded copies from various state recording offices.  ECF No. 65 at 9.  Plaintiff attached the email correspondence to its SA Complaint.  ECF No. 65 Attach. 11.  Plaintiff attached communications between its counsel and the REMIC Defendants that show the REMIC Defendants were trying to obtain the assignments from Citigroup and that Citigroup was attempting to provide the same to the REMIC Defendants.  Notably, however, the correspondence from Citigroup neither mentions LFS nor alludes to a third-party beneficiary of the Citigroup Contract. ECF No. 65 Attachs. 8–13.

Plaintiff alleges that LFS then assigned its rights to the claims arising under the RF76 contracts to Plaintiffs by virtue of "certain non-collusive, absolute, bona-fide assignments, in exchange for valuable consideration."  ECF No. 65 at 10.  Plaintiff attached copies of the original and corrected assignments, as well as the related servicing agreement.  ECF No. 65 Attachs. 14–16.

**Motion to Dismiss**

On October 9, 2013, the REMIC Defendants filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Failure to State a Claim upon Which Relief can be Granted.  ECF No 73.   In their Motion, the REMIC Defendants argue, in part, that this Court does not have subject matter jurisdiction because the assignment of the claims from LFS to Plaintiff was collusive and impermissibly manufactured diversity jurisdiction for the purposes of bringing this action in federal court.  ECF No. 73 at 4–10; see also 28 U.S.C.A. § 1359.  The factual basis of

Defendants' assertions was as follows.

LFS is a California limited liability company whose principal address is 1777 Botelho Drive, Suite 300, Walnut Creek, California 94596, whose registered agent is Mark Carter, a resident of California. Mark Carter executed both the First and Second RF76 Contracts on behalf of LFS. ECF No. 65 Attach. 3–4. RF76 is also a California limited liability company, with offices at 901 Calle Amanecer, Suite 150, San Clemente, California 92673. ECF No. 65 Attach. 3–4. On or about June 21, 2012, LFS assigned its rights under the RF76 contracts to Plaintiff LEF II. ECF No. 65 Attach. 14. At that time, Plaintiff had two members, Daniel C. Menan and Roger W. Hoss. Mr. Menan is a California resident and Mr. Hoss is a Florida resident. Days after the purported absolute assignment Mr. Menan resigned from Plaintiff, leaving Mr. Hoss as the sole member of Plaintiff. ECF No. 73 Attach. 3, 6. Diversity jurisdiction would not exist in this case if Mr. Menan did not resign because the citizenship of a limited liability company is based on its members' citizenship. Mr. Menan still remains the sole member of another similarly named entity, Landmark Equity Fund I LLC ("LEF I"), of which Mr. Hoss was the registered agent. ECF No. 73 Attach. 7. On June 27, 2012, days after Mr. Menan's resignation, Plaintiff LEF II filed its complaint in federal court seeking diversity jurisdiction. On December 14, 2012, a corrected assignment was executed to include all potential claims against Citigroup. ECF No. 65 Attach. 15.

The first and corrected assignments reference valuable consideration for the assignment, but do not specify the consideration. ECF No. 65 Attach. 14. On January 11, 2013, the same day that Plaintiff's original action was voluntarily dismissed and Plaintiff refiled the current action, LFS and Plaintiff executed a contract intended to be

retroactive to June 21, 2012 (the "Servicing Contract")—the date of the first assignment

of rights.  ECF No. 65 Attach. 16.  The preamble of the Servicing Contract states as

follows:

> WHEREAS; LFS was established for and/or has conducted servicing and/or enforcement of secured real estate loans, including but not limited to forbearances, modifications, foreclosure and sale of such loans, as detailed in this Contract; and
>
> WHEREAS; LEF [II] was established for and has conducted commercial litigation, including but not limited to that encompassing the contracts and related claims against [RF76], REMIC and the other third parties, as detailed in this Contract; and
>
> WHEREAS; the parties desire to effectuate a mutually beneficial relationship regarding the Contracts and loans, employing their particular expertise and skills; and
>
> WHEREAS; on or about June 21, 2012, effective that date, LFS transferred and assigned certain Contracts and any and all interest, right, title and claims that it had or may have had against [RF76 and REMIC] from the Contracts, dated 6/8/11 and 6/23/11, to LEF [II], Assignee, which has the full power and authority to use same for any and all purposes that LFS might or could do under the Contracts, as evidenced by a certain assignment, dated June 21, 2012 and a corrective assignment dated December 14, 2012, which reflected that the original assignment encompassed all claims against any other person, party or entity, including but not limited to [Citigroup] and William Edward Crowder, arising from and related to the Contracts, which it has and will prosecute against all and/or some of the above parties; and
>
> WHEREAS;  the parties desire to clarify, formalize and effectuate their business and legal relationship including the mutual, bilateral consideration for the respective interests, rights, title and claims, the assignment and transfer of same being complete, absolute, bona-fide and non-collusive, it is agreed as follows:

ECF No. 65 Attach. 16.  The key operative terms of the Servicing Contract provide as

follows:

> **1.**     **LEF [II]'s Duties:** In consideration for LFS's assignment(s) of its interest, right, title and claims under the [First and Second RF76 Contracts] and/or other performance under this Contract, LEF agrees to

pay LFS the sum of $100,000.00 and employs LFS as its agent and/or attorney-in fact to service certain real estate loans, including the modification, foreclosure, sale and other enforcement of the loans, with full payment of the above sum due by December 31, 2013.

    **2.**    **LFS's Duties:** In consideration for LEF [II]'s performance under this Contract, LFS will service and/or enforce the real estate loans as the agent and/or attorney-in-fact for LEF [II], holding only legal title to the interests granted by the borrowers in the notes and security instruments for each representative real estate loan and, per law and/or custom, as LEF [II]'s agent and/or attorney-in fact, LFS has the right to exercise and/or protect any or all of LEF [II]'s interests and/or to take any legal action permitted to and/or required of LEF [II] under the real estate loans, including, but not limited to, the right to enforce, modify and release the real estate loans, as well as foreclose upon the loans, perform any related action and sell the properties and perform any other act that LEF [II] could, regarding the real estate loans.

    . . . .

    **4.**    **Scope:**  The real estate loans referenced in the Contract, to be serviced and/or otherwise enforced by LFS as agent and/or attorney-in fact for LEF shall include all of the loans referenced in the schedules to the [First and Second RF76 Contracts], which are incorporated by reference.  The assignment of claims and other interests arising under the Contracts by LEF [sic] to LEF [II] are set forth in the above referenced Assignment (s) which are also incorporated by reference.  The parties again restate that the Assignments are effective as of June 21, 2012.

    **5.**    **Effect:** This Contract shall have the full force and effect of and/or shall constitute a [sic] appointment and/or power of appointment of agent and/or power of attorney or other like instrument, permitting LFS to continue servicing and/or enforcement of [sic] the real estate loans on behalf of LEF [II], without interruption, as well as exercising the other powers that LEF [II] could under the real estate loans.

ECF No. 65 Attach. 16. In sum, on January 11, 2013, Plaintiff LEF II contracted to pay LFS $100,000.00 on or before December 31, 2013, for the right to enforce the terms of the First and Second RF76 Contracts, while leaving to LFS all servicing duties of the subject loans. The stated purpose of the arrangement was that Plaintiff was better suited for commercial litigation.

8

The REMIC Defendants' Motion to Dismiss also asserts that LFS, represented by Plaintiff's current counsel Paul Wersant, has been filing various foreclosure actions in federal courts concerning the subject properties, while asserting that LFS is the owner, assignee, or holder of the loans.   ECF No. 73 at 9.   Also, a review of this Court's records indicates that Plaintiff LEF II filed a suit on February 3, 2012, wherein Mark Carter was pleaded as the sole member of Plaintiff for purposes of diversity jurisdiction. See Landmark Equity Fund II, LLC v. Solaris at Brickell Bay Condo. Assoc., 1:12-cv-20421-WMH, ECF No. 1.   The case was voluntarily dismissed with prejudice on April 19, 2012, without amending the original complaint. Id. at ECF No. 11.

On December 10, 2013, after carefully considering the REMIC Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, the Response and Reply thereto, and reviewing this Court's records, this Court determined that an evidentiary hearing was necessary for the limited purpose of determining whether diversity jurisdiction was impermissibly manufactured by Plaintiff and LFS.   ECF No. 113.   This Court originally instructed Plaintiff to ensure the appearance of Roger Hoss, Daniel Menan, and Mark Carter because these three persons were active parties in the assignments.   This Court later clarified its order by informing Plaintiff that this Court was not commanding the witnesses' appearance, just guiding Plaintiff on who could adequately testify regarding the issue of manufactured diversity jurisdiction.   ECF No. 133.   After an initial continuance, the evidentiary hearing was held on January 29, 2014. ECF No. 137.

**The Evidentiary Hearing**

At the evidentiary hearing held on January 29, 2014, this Court heard testimony

from Roger Hoss and Daniel Menan, who were subject to cross-examination by the REMIC Defendants' counsel.   ECF No. 137.   Defense counsel invoked the rule of witness sequestration.

<u>Roger Hoss's Testimony</u>

Roger Hoss testified on direct examination that he was employed by Mark Carter, the owner of what is seemingly a parent company, Sequoia Equities Inc.  Mr. Hoss is not only the now sole owner of Plaintiff LEF II, but he is also a director of LFS.  Mr. Hoss testified that he and Mr. Menan have known each other for approximately thirty to forty years.

Mr. Hoss explained that he and Mr. Menan, while also working for Mr. Carter, formed Plaintiff LEF II in 2009–2010 for the purpose of acquiring one loan on the "Solaris" property in Miami, Florida.  He testified that Mr. Menan's resignation occurred only after that investment had fully resolved.  He testified that LFS sought to assign the rights under the RF76 contracts because LFS was liquidating and did not want pending lawsuits, which could complicate the wind up of LFS.

Mr. Hoss admitted that Plaintiff had not paid LFS the $100,000.00 due on December 31, 2013.  Mr. Hoss stated that LFS and Plaintiff were in the process of restructuring the compensation schedule and that the money was not paid because of some complications—mainly that this current lawsuit had not been resolved.  When directly asked who would be paid from the proceeds of the instant lawsuit, Mr. Hoss admitted that Mr. Carter was going to receive any recouped funds.  Mr. Hoss frequently used the term "we" when referring to actions by both LFS and Plaintiff LEF II.

On cross-examination, Mr. Hoss testified that Plaintiff does not have a bank

account established and has no physical assets.  When asked how the proceeds from Plaintiff's Solaris investment were distributed, Mr. Hoss admitted that Plaintiff LEF II did not receive the proceeds; rather, Mr. Hoss personally distributed funds to Mr. Carter and Mr. Menan.  Defense counsel elicited testimony regarding the office locations of Plaintiff and LFS, which hold offices next door to one another in a Florida office building—with Mr. Hoss working for both companies.  When asked again how LFS would ultimately get paid under the Servicing Contract, Mr. Hoss testified that LFS would get paid when LEF II receives proceeds from this suit.  More specifically, it was represented that Mr. Carter would receive the funds, despite the fact that all relevant contracts were executed by LFS, not Mark Carter personally.   Defense counsel elicited testimony concerning ongoing litigation in Florida wherein LFS is the Plaintiff.  When asked why LFS and Plaintiff perceived Plaintiff to be more suited for litigation, despite LFS being involved in other lawsuits, Mr. Hoss answered that it was a business decision.  Mr. Hoss explained that he has experience in contested litigation, which, as Plaintiff's sole member and employee, he asserted supports his claim that Plaintiff is better suited for litigation.  Mr. Hoss did not clarify why he could not use his litigation expertise as the director of LFS.

On redirect-examination, Plaintiff's attorney, Mr. Wersant, elicited testimony from Mr. Hoss indicating that the representation in the complaint in Landmark Equity Fund, II, LLC v. Solaris at Brickell Bay Condominium Association, Inc., No. 12-20421, that Mark Carter was the sole member of Plaintiff, was an uncorrected error made by Mr. Wersant.

Daniel Menan's Testimony

Mr. Menan testified that Mark Carter is the President/CEO of Sequoia Equities

Inc., which specializes in the ownership and management of apartment complexes on the West Coast of the United States of America.  Mr. Menan is the vice president of LFS.  Mr. Menan is also the sole member of LEF I, of which Mr. Hoss is the registered agent.  Mr. Menan testified that he resigned as a member of Plaintiff LEF II because he no longer had a financial interest in the company.  He testified that he acts in an advisory capacity for LFS on the loan pools assigned to Plaintiff, but has no experience in litigation.  Mr. Menan testified consistent with Mr. Hoss's testimony that the $100,000.00 consideration had not been paid to LFS and that Mark Carter is the party who would get the money from the instant suit.

On cross-examination, defense counsel asked Mr. Menan to explain why he had testified that he had to resign from Plaintiff LEF II after he was no longer involved with the company, yet he is still involved in overseeing the loans that are now allegedly assigned to Plaintiff.  Mr. Menan clarified that he "monitors" the loans by looking at the loans and their financials.  When asked if he independently determined that he should resign from Plaintiff, Mr. Menan paused before stating that it was discussed with Mr. Carter and Mr. Hoss, but that it was ultimately his decision.  When asked what prevented Mr. Hoss from acting as LFS's director while performing litigation duties needed for this suit, Mr. Menan stated that he was not qualified to answer the question.

During closing arguments, Plaintiff's counsel's argument settled on a theory that Mr. Carter is the real party at interest, not LFS.

ANALYSIS

**Standard of Review**

Federal courts are courts of limited jurisdiction, and can hear only cases for

which there has been a congressional grant of jurisdiction. Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1260–61 (11th Cir. 2000) (citing Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999)). Because subject-matter jurisdiction is defined by statute, "[i]t cannot be created by the consent of the parties, nor supplanted by consideration of convenience and efficiency." Id. (citing Fitzgerald v. Seaboard Sys. R.R., 760 F.2d 1249, 1251 (11th Cir. 1985); E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 929 (2d Cir. 1998)). A federal court must sua sponte inquire into the existence of jurisdiction whenever the circumstances indicate that such may be lacking. Id. (citing Fitzgerald, 760 F.2d at 1251 ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises.")).

Under 28 U.S.C. § 1332, a district court has subject-matter jurisdiction over any civil case if the parties are "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." Morrison, 228 F.3d at 1261. However, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C.A. § 1359.

A motion to dismiss based on subject-matter jurisdiction may come in two forms (1) a facial attack, or (2) a factual attack. Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990); see also Fed. R. Civ. P. 12(b)(1) (providing that party may assert subject-matter jurisdiction defense by motion to dismiss). A facial attack on the complaint requires the court to take the allegations in the complaint as true, and determine whether the plaintiff sufficiently alleged a basis for subject-matter jurisdiction.

Id. (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)[4]); see generally Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (setting forth normal standard of review for motions to dismiss, which are limited to review of pleadings while taking everything alleged as true). A factual attack challenges the existence of subject-matter jurisdiction as a matter of fact, irrespective of the pleadings, and the court can consider testimony, affidavits, and other evidence when ruling on the issue. Id. (citing Menchaca, 613 F.2d at 511); see also Houston v. Marod Supermkts., Inc., 733 F.3d 1323, 1326 (11th Cir. 2013) (stating that, in factual attacks, courts are free to weigh facts and are not constrained to viewing facts in light most favorable to plaintiff). If a defendant makes a factual attack based on evidence outside of the pleadings, the plaintiff must also "submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject-matter jurisdiction." Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981).

Here, the REMIC Defendants argue that LFS is the real party at interest because the assignment of claims was not an absolute and legitimate transfer of interest. Because LFS is a California company for purposes of diversity jurisdiction based on its sole member, Mr. Carter, being a California resident, if LFS has a remaining interest in this case, diversity jurisdiction cannot exist. The REMIC Defendants' challenge to this Court's subject-matter jurisdiction is a factual attack on the propriety of the purported assignments. Thus, this Court may consider things outside of the Complaint to determine the validity of jurisdiction, including any testimony received during the evidentiary hearing on the limited issue of subject-matter jurisdiction. See Cable/Home

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding precedent in the courts of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 855 (11th Cir. 1990) (addressing discretionary nature of holding evidentiary hearing on motion to dismiss for lack of jurisdiction).  Furthermore, attachments to a complaint are considered part of the pleading for purposes of a motion to dismiss.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Solis–Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985).

**Improperly Manufactured Jurisdiction**

As previously stated, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  28 U.S.C.A. § 1359.  The Supreme Court of the United States explained the purpose of § 1359 as follows:  "If federal jurisdiction could be created by [improperly or collusively made] assignments . . ., which are easy to arrange and involve few disadvantages for the assignor, then a vast quantity of ordinary contract and tort litigation could be channeled into the federal courts at the will of one of the parties."  Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969). Whereas some circuits have applied a presumption of collusion when there is an assignment of claims between related entities that creates diversity, see, e.g., Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991–92 (9th Cir. 1994), the United States Court of Appeals for the Eleventh Circuit has declined to read a presumption of collusion into § 1359, Ambrosia v. Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1314 (11th Cir. 2007) (citing Herzog Contracting Corp. v. McGowen Corp., 976 F.2d 1062, 1067 (7th Cir. 1992)) ("The reasoning of the Seventh Circuit is persuasive.  The language of 28 U.S.C. § 1359 does not provide for applying a

presumption of collusion in determining whether diversity jurisdiction was manufactured in violation of the statute.").

Ignoring the parties' motives,[5] if the assignor retained an interest in the assigned claim, the assignment is not absolute and, thus, improper under § 1359.  Ambrosia, 482 F.3d at 1315.  The determination of whether a transfer is absolute may turn on the consideration exchanged for the assigned claim.  Id. at 1315–16 (citing Cross v. Allen, 141 U.S. 528 (1891); Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327 (1895)).  Here, though the circumstances were suspicious enough to warrant inquisition based on the REMIC Defendants' factual challenge, there is no presumption of collusion.  Likewise, this Court need not delve into the issue of what LFS and Plaintiff's motives were for the assignment.  Instead, the dispositive issue is whether LFS retained an interest in the instant suit after the purported assignment.

The unequivocal testimony at the evidentiary hearing reveals that LFS still has an interest in this suit.  Both Roger Hoss and Daniel Menan testified that the "consideration" ($100,000.00) for the assignments had not been paid to LFS (or Mark Carter, who Plaintiff represents is the true benefactor of any lawsuit proceeds) by the December 31, 2013 deadline, because this case has not been resolved.  Mr. Hoss and Mr. Menan testified that any proceeds from this case would go to Mr. Carter.  Plaintiff's new position is that the fact that Mr. Carter would personally receive any funds resulting from this case somehow rebuts the REMIC Defendants' position that the assignment

---

[5] Despite mentioning the parties' motive to create jurisdiction in Kramer, the Supreme Court did not find it necessary to revisit its prior cases wherein the Court affirmatively stated that the parties' motive is inconsequential.  394 U.S. at 828 n.9 (citing, e.g., Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518 (1928)) ("Hence, we have no occasion to re-examine the cases in which this Court has held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive.").

from LFS to Plaintiff LEF II was not absolute.  To the contrary, Plaintiff's position only highlights the true nature of the circumstances, that Mr. Carter is the only person with an interest in this case (through LFS) and he has used the guise of LLCs to shift rights and money around as required, depending on what is most convenient.  Furthermore, the contracts that Plaintiff relies on in this case clearly identify LFS as the contracting party, not Mark Carter individually; thus, Plaintiff's representations at the hearing are inconsistent with its own pleading.  Plaintiff could not argue in its pleading that Mr. Carter is the interested party in this case because Mr. Carter himself would destroy diversity jurisdiction, as he is a resident of California.

In sum, (1) Mr. Carter is the sole member of LFS; (2) LFS never received consideration for the assignment of rights to Plaintiff LEF II; (3) Plaintiff's sole member, Mr. Hoss, is a seasoned employee of Mr. Carter (or his businesses) and a director at LFS; and (4) Mr. Hoss and Mr. Menan admit that proceeds from this case would go to Mr. Carter/LFS.  Consequently, this Court finds that LFS retained an interest in the instant proceedings after the non-absolute assignment and, thus, this Court holds that diversity jurisdiction was improperly or collusively manufactured as proscribed by 28 U.S.C. § 1359.

CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED AND ADJUDGED that the REMIC Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 73, is GRANTED.  Accordingly, Counts I, II, and IV against the REMIC Defendants are DISMISSED for lack of subject-matter jurisdiction.  All other pending motions relating to the REMIC Defendants, including the motion to dismiss for failure to state a

claim upon which relief can be granted, are hereby DENIED AS MOOT.

DONE AND ORDERED at Fort Lauderdale, Florida this 12th day of February 2014.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record