UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No. 13-20122-CIV-HUNT

LANDMARK EQUITY FUND II, LLC

      Plaintiff,

v.

RESIDENTIAL FUND 76, LLC,
REAL ESTATE MORTGAGE INVESTMENT
CORPORATION [REMIC],
CITIGROUP GLOBAL MARKETS REALTY
CORPORATION

      Defendants.

_____/

## ORDER ON DEFENDANT CITIGROUP GLOBAL MARKETS REALTY CORPORATION'S MOTION TO DISMISS

This matter is before this Court on Defendant Citigroup Global Markets Realty Corporation's ("Citigroup") Motion to Dismiss Second Amended Complaint, filed on October 15, 2013.  ECF No. 79.  On May 30, 2012, the parties consented to proceed in this case before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C.A. § 636(c).  See ECF No. 47.  Having carefully reviewed Citigroup's Motion to Dismiss, the Response and Reply thereto, the entire case file, and applicable law, and being otherwise fully advised in the premises, Citigroup's Motion to Dismiss is hereby GRANTED, and Counts III and IV of Plaintiff's Second Amended Complaint against Defendant Citigroup are DISMISSED WITH PREJUDICE, as fully set forth below.

## BACKGROUND

On June 27, 2012, Plaintiff Landmark Equity Fund II LLC ("LEF II") filed its

original complaint against Defendants Residential Fund 76 LLC ("RF76") and Real Estate Mortgage Investment Corporation ("REMIC") (collectively, the "REMIC Defendants") alleging various claims involving contracts for the purchase of pools of residential loans.  Landmark Equity Fund II, LLC v. Residential Fund 76, No. 12-CV-22379-MGC, at ECF No. 1.  Plaintiff pleaded diversity jurisdiction.  Id.  On December 14, 2012, Plaintiff amended its complaint by, inter alia, adding Citigroup as a defendant. Id. at ECF No. 16.  On December 21, 2012, the REMIC Defendants filed a Motion to Dismiss for lack of jurisdiction and for failure to state a claim.  Id. at ECF No. 20.  On January 8, 2013, Plaintiff filed a notice of voluntary dismissal without prejudice, and the Honorable Marcia G. Cooke entered an order dismissing the case on January 11, 2013. Id. at ECF No. 21, 23.

On the same day that the original case was dismissed, January 11, 2013, Plaintiff refiled the action in this Court alleging the same claims against Defendants— seeking specific performance or, in the alternative, monetary damages—and continuing to allege diversity jurisdiction.  ECF No. 1.  Plaintiff has subsequently amended its complaint twice; the most recent being Plaintiff's Second Amended Complaint (the "SA Complaint"), filed on September 25, 2013.  ECF No. 65.  Plaintiff's SA Complaint asserts two counts against Citigroup: (1) Specific Performance of Third-Party Contract (Count III); and (2) Breach of Implied Contract/Quasi Contract (Count IV).[1]  ECF No. 65 at 14–18.  After Citigroup filed the instant motion to dismiss, it filed its Motion to Stay Discovery Pending Adjudication of its Motion to Dismiss Plaintiff's Complaint.[2]  ECF No.

---

[1] Count IV is also against the REMIC Defendants.  ECF No. 65 at 16.

[2] This Court previously denied the REMIC Defendant's Motion to Stay Discovery; Citigroup was not a party to that motion.  See ECF No. 58, 63.

82.   This Court carefully reviewed Citigroup's request to stay discovery, including Plaintiff's opposition thereto, ECF No. 92, and held that staying discovery pending resolution of Citigroup's Motion to Dismiss was appropriate under the circumstances. ECF No. 107; see generally Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1366 (11th Cir. 1997) (holding that stay on discovery may be appropriate in some instances while court rules on motion to dismiss).   Consequently, this Court stayed the parties' pending motions on discovery.   ECF No. 81, 101.   Plaintiff subsequently sought reconsideration of the stay order, which is still pending before this Court.  ECF No. 114.

Defendant Citigroup's current Motion to Dismiss asserts that Plaintiff's SA Complaint fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  Plaintiff's SA Complaint is based on the following allegations.

**Plaintiff's SA Complaint**

On or about June 7, 2011, Defendant Citigroup and RF76 executed a Mortgage Loan Sale Agreement (the "Citigroup Contract") for the sale of real estate loans from Citigroup to RF76.[3]  ECF No. 65 at 4.  Plaintiff attached a copy of the Citigroup Contract to its Complaint.  ECF No. 65 Attach. 2.  Plaintiff asserts that "upon information and belief, the Defendants negotiated and/or executed the Citigroup Contract based upon and/or in reliance of the simultaneous sale of these same loans to Landmark Financial Services, LLC, [sic] Plaintiff's predecessor in interest."  ECF No. 65 at 4.  It is clear from the record that Plaintiff's counsel erred in identifying Plaintiff's predecessor in interest as Landmark Financial *Services* LLC instead of Landmark Financial *Solutions* LLC

---

[3] Though Plaintiff states that the Citigroup Contract was between the REMIC Defendants and Citigroup, the copy of the Citigroup Contract attached to the Complaint represents that Defendant RF76 was the beneficiary, not Defendant REMIC.  ECF No. 65 Attach. 2.   Plaintiff's position is that REMIC and RF76 are alter egos; but, REMIC maintains that is was not a party to the Citigroup Contract.  For purposes of this Order, this Court will refer to the nature of the contracts based on their express terms.

(hereinafter "LFS").  See ECF No. 65 Attach. 3 (contract assigning loans from RF76 to LFS).

Plaintiff LEF II further asserts that "[u]pon information and belief, the consideration paid by [LFS] to the REMIC Defendants for the loans was intended to be and actually used by REMIC Defendants to pay Defendant Citigroup for these same loans under the Citigroup Contract."  ECF No. 5.  However, Plaintiff acknowledges section 2 of the Citigroup Contract required Citigroup to provide assignments of the real estate loans to Defendant RF76.  ECF No. 65.  Section 15 of the Citigroup Contract states that the agreement

> shall inure to the benefit of and be binding upon [Citigroup] and [RF76] and the respective successors and assigns of [Citigroup] and [RF76].  This Agreement may not be assigned by [RF76]; provided, however, that [RF76] may make one assignment of this Agreement to a newly formed entity of which [RF76] will remain as Managing Member with ten (10) days written notice to [Citigroup].

ECF No. 65 Attach. 2.  Plaintiff only includes the first portion of section 15 in its Complaint, omitting the restrictive assignment language that follows.  ECF No. 65 at 6.

On or about June 8, 2011, LFS purchased a pool of real estate loans from RF76, including at least ten loans secured by real property in Florida, for $1,897,214.37 (the "First RF76 Contract").  ECF No. 65 at 6.  Plaintiff LEF II attached a precise copy of the First RF76 Contract to its SA Complaint.  ECF No. 65 Attach. 3.  In the preamble, it was represented that RF76 was "currently under contract to purchase and become the Owner (as defined herein) and servicer of record for certain Mortgage Loans (as defined herein), and in its capacity as Owner, has the power to sell, transfer, assign and convey the Mortgage Loans to Buyer."  ECF No. 65 Attach. 3.  The preamble further states that RF76 "is under contract to acquire a specific number of Mortgage Loans from a third

party seller, Citiglobal based upon a written contract to acquire such Mortgage Loans and [LFS] wishes to acquire a specific portion of those Mortgage Loans from [RF76] concurrent with [RF76's] acquisition thereof."  ECF No. 65 Attach. 3.

On or about June 23, 2011, LFS purchased a second pool of real estate loans from RF76 for real property in various states, including at least twenty-one loans secured by properties in Florida, for $694,659.16 (the "Second RF76 Contract").  ECF No. 65 at 6–7.  Plaintiff attached a precise copy of the Second RF76 Contract to its SA Complaint.  ECF No. 65 Attach. 4.  The preamble states that "[RF76] is the Owner . . . and servicer of record for certain Mortgage Loans . . . or the servicing agent and attorney-in-fact of the Owner of the Mortgage Loans with, in its capacity as Managing Member, the power to sell transfer, assign and convey the Mortgage Loans on behalf of the Owner."  ECF No. 65 Attach 4.  Notwithstanding Plaintiff's contrary representations in its SA Complaint, there is no reference to the Citigroup Contract in the Second RF76 Contract.  See ECF No. 65 at 7 (stating that both the first and second RF76 contracts stipulate that RF76 contracted with Citigroup to acquire loans).

After the execution of the RF76 contracts, Plaintiff claims that RF76 did not provide certain assignments to LFS.  ECF No. 65 at 7.  Plaintiff alleges that LFS repeatedly contacted the REMIC Defendants, orally and in writing, regarding the missing assignments, which the REMIC Defendants promised to, but did not, provide.  ECF No. 65 at 8.  On April 24, 2012,[4] after months of correspondence between the REMIC Defendants and Plaintiff regarding the missing assignments, the REMIC

---

[4] Plaintiff's Complaint states that the date is April 18, 2014, but then provides a citation to its attached "Exhibit 11," which is identical to "Exhibit 12," that shows a response from the REMIC Defendants on April 24, 2014.

Defendants responded, citing issues with obtaining the missing assignments from Defendant Citigroup and issues with obtaining recorded copies from various state recording offices.  ECF No. 65 at 9.  Plaintiff attached the email correspondence to its Complaint.  ECF No. 65 Attach. 11.  Plaintiff attached communications between its counsel and the REMIC Defendants that show that REMIC was trying to obtain the assignments from Citigroup and that Citigroup was attempting to provide the same to the REMIC Defendants.  Notably, however, correspondence from Citigroup neither mentions LFS nor alludes to a third-party beneficiary of the Citigroup Contract.  ECF No. 65 Attachs. 8–13.

Plaintiff alleges that LFS assigned its rights in the claims arising under the RF76 contracts to Plaintiff "by virtue of certain non-collusive, absolute, bona-fide assignments, in exchange for valuable consideration."  ECF No. 65 at 10.  Plaintiff attached copies of the original and corrected assignments, as well as the related servicing agreement.  ECF No. 65 Attachs. 14–16.

<u>Count III</u>

In Count III of the SA Complaint against Citigroup, Plaintiff incorporates by reference seventy-two preceding paragraphs, including Counts I and II, which are solely against the REMIC Defendants.  ECF No. 65 at 14.  Notwithstanding the inappropriate shotgun style pleading,[5] Count III sets out a purported claim against Citigroup for specific performance of the Citigroup Contract as an intended third-party beneficiary.  ECF No. 65 at 14.  Plaintiff claims that Citigroup breached the Citigroup Contract by failing to provide the missing assignments, and further claims that Citigroup was or

---

[5] See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (discussing "perfect example" of shotgun pleading).

should have been aware that LFS was a third-party beneficiary of the Citigroup Contract.  ECF No. 65 at 15.  Plaintiff cites "28 U.S.C. § 2201 *et seq* and the Court's equitable powers" for a judgment compelling Citigroup to produce the missing assignments and loan documents and awarding applicable damages.  ECF No. 65 at 16.

<u>Count IV</u>

In Count IV of the SA Complaint against Citigroup, Plaintiff incorporates by reference eighty-two preceding paragraphs, including Counts I, II, and III.  ECF No. 65 at 16.  Moreover, Count IV sets out a purported claim for "breach of implied contract/quasi contract" against Citigroup *and* the REMIC Defendants.  ECF No. 65 at 16.  Notwithstanding the inappropriate shotgun style pleading, Plaintiff claims that Citigroup and the REMIC Defendants knowingly received and accepted conferral of the benefit of LFS's payments for the real estate loans.  ECF No. 65 at 17.  Plaintiff maintains that based on the parties' conduct and their tacit understanding, the REMIC Defendants and Citigroup entered into an implied contract or quasi contract with LFS, agreeing to perform the duties under the contracts.  ECF No. 65 at 17.  Plaintiff requests a judgment for at least $110,000.00 in damages caused by the Defendants' breach of the implied contract.  ECF No. 65 at 17–18.

ANALYSIS

**Motion to Dismiss Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  For purposes of a motion to dismiss, a court must accept all allegations in a complaint as

true and evaluate all plausible inferences in favor of the plaintiff.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012).  However, "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Though Rule 8 does not require detailed factual allegations, naked assertions that are void of factual enhancement are insufficient to overcome a motion to dismiss.  Id. at 677–78 (citing Twombly, 550 U.S. at 555).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. at 678 (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted).  "[W]hether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 670 (citing Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007)).  Furthermore, attachments to a complaint are considered part of the pleading for purposes of a Rule 12(b)(6) motion to dismiss.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Solis–Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985); see also Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

**Third-Party Beneficiary Claim (Count III)**

Count III of the SA Complaint raises a third-party-beneficiary claim and requests specific performance as the requested relief.[6]

<u>Choice of Law</u>

"In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." <u>Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.</u>, 92 F.3d 1110, 1115 (11th Cir. 1996) (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)). Under Florida law, absent "a contractual provision specifying the governing law, a contract (other than one for the performance of services) is governed by the law of the state in which the contract was made." <u>Fioretti v. Mass. Gen. Life Ins. Co.</u>, 53 F.3d 1228, 1235 (11th Cir. 1995) (citing <u>Equitable Life Assur. Soc'y of the U.S.A. v. McRee</u>, 78 So. 22, 24 (Fla. 1918)); <u>see also AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.</u>, 494 F.3d 1356, 1360 (11th Cir. 2007) ("The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law."). A choice-of-law provision controls "'unless the law of the chosen forum contravenes strong public policy.'" <u>Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.</u>, 704 F.3d 927, 932 (11th Cir. 2013) (quoting <u>Maxcess, Inc. v. Lucent Technologies, Inc.</u>, 433 F.3d 1337,

---

[6] Defendant Citigroup also argues in its Motion to Dismiss that Plaintiff's requested relief—specific performance of the terms of the Citigroup Contract—is inappropriate. Plaintiff's response does not fully address this issue, simply arguing that specific performance is appropriate because an assignment is necessary to enforce the loans. ECF No 88 at 14. Though the breach of a contract for the sale of real estate may, under certain circumstances, warrant a court order requiring specific performance of the contract, a contract to a buy large pool of mortgage loans may not warrant such relief. <u>See, e.g.</u>, <u>Emigrant Bank v. UBS Real Estate Secs., Inc.</u>, 854 N.Y.S.2d 39, 42 (N.Y. 2008) (holding that request for specific performance of contract for pool of mortgage loans was properly dismissed for failure to set forth non-conclusory allegations as to why award of damages would be inadequate). However, this Court does not reach the issue of whether Plaintiff seeks the appropriate relief because Plaintiff failed to state a cause of action under a third-party-beneficiary theory.

1341 (11th Cir. 2005)).  Here, the Citigroup Contract, under which Plaintiff claims LFS is a third-party beneficiary, was executed in New York and contains a choice-of-law provision stating that the laws of the State of New York govern the Citigroup Contract. ECF No. 65 Attach. 2 at 7.  Neither party has challenged the choice-of-law provision. Accordingly, this Court applies New York law for the interpretation of the Citigroup Contract.  In doing so, this Court "is bound to adhere to decisions of [New York's] intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise."  Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir.1983).

Failure to State a Third-Party-Beneficiary Claim

"The third-party beneficiary concept arises from the notion that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay or perform."  Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 211 (N.Y. 1985) (quoting Seaver v. Ransom, 120 N.E. 639 (N.Y. 1918)) (internal quotation marks omitted).  A third-party beneficiary may be "intended" (having the right to enforce the contract) or "incidental" (not having the right to enforce the contract).  Id. (citing Restatement (Second) of Contracts § 302 (1979)).  "Essential to status as an intended beneficiary . . . is either that performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary or that the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."  Id. (quoting Restatement (Second) of Contracts § 302 (1979)) (internal quotation marks omitted).  "[I]ntention can be negated by express agreement of the promisor and the promisee and . . . recognition of the

beneficiary's right to performance must be appropriate to effect the intention of the parties." Id. at n.2.  A dispositive inquiry is whether the third party's right to enforce the contract is to the exclusion of all other parties, i.e., "that no one other than the third party can recover if the promisor breaches the contract . . . or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party." Id. (citations omitted).

In sum, to sufficiently assert a third-party-beneficiary claim under the Citigroup Contract, Plaintiff LEF II must allege that (i) the Citigroup Contract is a valid and binding contract between Citigroup and RF76; (ii) that the contract was specifically intended for LFS's individual benefit; and (iii) that the benefit to LFS was sufficiently immediate, rather than incidental, to indicate the assumption by RF76 and Citigroup of a duty to compensate LFS if the benefit was lost.  See Thompson v. Bosswick, 855 F. Supp. 2d 67, 84 (S.D.N.Y. 2012) (granting summary judgment for failing to demonstrate elements of third-party-beneficiary claim).  Here, Plaintiff's allegations that it is in fact a third-party beneficiary to the Citigroup Contract is inapposite to the express terms of the Citigroup Contract, as well as the subsequent RF76 contracts.  The terms of the Citigroup Contract unequivocally contemplate RF76 as the benefitting party throughout the contract—capable of enforcing its terms.  ECF No. 65 Attach. 2.  The contract specifically states that it "may not be assigned by [RF76]; provided, however, that [RF76] may make one assignment of this Agreement to a newly formed entity of which [RF76] will remain as Managing Member with ten (10) days written notice to [Citigroup]." Notably, Plaintiff LEF II does not allege that it is a newly formed entity of which RF76 is a managing member.  Thus, not only is there no affirmative mention of LFS as the third-

party beneficiary to the Citigroup Contract, the unambiguous terms of the Citigroup Contract are contrary to such a construction. See Cerullo v. Aetna Cas. & Sur. Co., 341 N.Y.S.2d 767, 770 (N.Y. 1973) ("A third-party beneficiary cannot enforce a contract in his favor unless the contract clearly expresses an intention to benefit that third-party.").

Plaintiff's reliance on the RF76 contracts as sufficient to allege its third-party-beneficiary status is equally unavailing. First, *both* parties to a third-party-beneficiary contract must intend for the third-party to be the beneficiary. Cf. State v. Liberty Mut. Ins. Co., 803 N.Y.S.2d 865, 866 (N.Y. 2005) ("The intention to benefit the third party must appear from the four corners of the instrument, and the intention to cover the third party must be that of both parties to the insurance contract." (internal quotation marks omitted)). Based on the attachments to Plaintiff's SA Complaint, Plaintiff can only allege that RF76 intended to sell the mortgage loans it obtained from Citigroup to LFS. Second, though the First RF76 Contract includes terms that reference RF76's acquisition of certain loans from Citigroup, there is also an express clause stating that LFS is not to be considered a third-party beneficiary on any servicing contract between RF76 and a servicing agent: "In no event shall [LFS] be deemed a third party beneficiary or [sic] any servicing contract or agreement between [RF76] and any servicing agent and in no event shall [RF76] or any servicing agent be deemed a fiduciary for the benefit of [LFS] with respect to the Mortgage Loans." ECF No. 65 Attach. 3 at 5. The Second RF76 Contract did not reference Citigroup at all because RF76 was already the owner or servicer of the subject loans at the time the second contract was executed.

Under the Citigroup Contract, RF76 became the sole owner of the loans and

could then sell the loans to any person or company that it pleased.  Likewise, RF76 still retains the sole right to bring suit against Citigroup for breach of the Citigroup Contract. Therefore, at best, LFS is an incidental third-party beneficiary to the Citigroup Contract. Accordingly, based on a careful review of the SA Complaint and the attachments thereto, this Court holds that Count III fails to state a plausible third-party-beneficiary claim.  Furthermore, Plaintiff's pleading and attachments thereto indicate that leave to amend—despite Plaintiff's failure to request leave to amend—would be futile.

**Implied-Contract/Quasi-Contract Claims (Count IV)[7]**

Plaintiff LEF II's SA Complaint is not a model of clarity on whether it seeks breach of contract implied-in-fact (quantum meruit), breach of contract implied-in-law (unjust enrichment), or both.  Regardless, both types of quasi contract are precluded by the existence of written contracts on the subject matter.

An implied-in-fact contract is not established by promises or assurances; rather, it is established by conduct.  Zimmer v. Town of Brookhaven, 678 N.Y.S.2d 377, 381 (N.Y. App. Div. 1998) (citing Parsa v. State, 474 N.E.2d 235 (N.Y. 1984)). "A contract cannot be implied in fact where the facts are inconsistent with its existence, or against the declaration of the party to be charged, or where there is an express contract covering the subject-matter involved, or against the intention or understanding of the parties; or where an express promise would be contrary to law." Miller v. Schloss, 113 N.E. 337, 338–39 (N.Y. 1916); accord Julien J. Studley, Inc. v. N.Y. News, Inc., 512 N.E.2d 300, 301 (N.Y. 1987).  "A contract implied-in-law exists

---

[7] The parties argue both Florida and New York law in the quasi-contract portion of their arguments.  For purposes of this Order, the requirements for asserting a quasi-contract claim are the same under both states' laws.

where one party, without any expression of assent from the other, obtains or retains possession of money or other property that actually belongs to the latter, by oppression, extortion, deceit or similar means." Rosefsky by Koffman v. State, 617 N.Y.S.2d 969, 971 (N.Y. App. Div. 1994). A contract implied in law "rests upon the equitable principal that a person shall not be allowed to enrich himself unjustly at the expense of another." James v. State, 457 N.Y.S.2d 148, 152 (N.Y. App. Div. 1982) (citing Miller, 113 N.E. 337)). New York's highest court, The Court of Appeals of New York, recently summarized unjust enrichment claims as follows:

> [T]he basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in "equity and good conscience" should be paid to the plaintiff. In a broad sense, this may be true in many cases, but unjust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012) (citations omitted).

Plaintiff LEF II's third rendition of its complaint highlights Citigroup's contractual relationship/obligations with the REMIC Defendants on the subject matter and Citigroup's *ex post facto* attempts to provide missing assignments to RF76 (or the REMIC Defendants), pursuant to the Citigroup Contract: "Defendant Citigroup provided some but not all documents to Plaintiff's predecessor in interest, *through REMIC*, in response to the communication between Plaintiff's predecessor in interest and REMIC." ECF No. 65 at 17 (emphasis added). Plaintiff LEF II attached three contracts to its SA Complaint—the Citigroup Contract and the First and Second RF76 Contracts. These

14

contracts encompass the subject matter at issue in Plaintiff's quasi-contract claims—the sale and acquisition of the subject loans.  Essentially, Plaintiff seeks equitable relief because the terms of the contracts do not support Plaintiff's position.  Such is not the purpose of a quasi-contract claim.  Instead, Plaintiff may seek an adequate remedy at law under a breach of contract claim against RF76 and REMIC in the proper jurisdiction.[8]  ECF No. 65 at 13–14.  Accordingly, as presented, and in consideration of the attachments to Plaintiff's SA Complaint and Plaintiff's adequate remedy at law against RF76 for any breach-of-contract claim, Plaintiff is precluded from bringing a quasi-contract claim against Citigroup.  See, e.g., Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 610 (2d Cir. 1996) (quoting Clark–Fitzpatrick, Inc. v. Long Island R.R., 516 N.E.2d 190, 193 (N.Y. 1987) ("Under New York law, the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." (internal quotation marks omitted)); accord Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 369 (S.D.N.Y. 2009).[9]  Furthermore, based on Plaintiff's pleading and the attachments thereto, it is apparent that Plaintiff cannot cure the deficiencies by a third-amended complaint, nor has Plaintiff sufficiently sought leave to amend.

---

[8] This Court is contemporaneously dismissing Plaintiff's claims against the REMIC Defendants for lack of subject-matter jurisdiction via separate order.

[9] Similarly, "[t]o state a claim for unjust enrichment [under Florida law], a plaintiff must plead the following elements: 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (4th DCA 2006) (citing Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc)).  "'The theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.'"  Gary v. D. Agustinini & Asociados, S.A., 865 F. Supp. 818, 827 (S.D. Fla. 1994) (quoting Bowleg v. Bowe, 502 So. 2d 71, 72 (Fla. 3d DCA 1987)).

CONCLUSION

Based on the foregoing analysis, it is hereby ORDERED AND ADJUDGED that Defendant Citigroup's Motion to Dismiss, ECF No. 79, is GRANTED and Plaintiff's Second Amended Complaint, ECF No. 65, is DISMISSED WITH PREJUDICE as to Counts III and IV against Defendant Citigroup.  Furthermore, all other pending motions relating to Defendant Citigroup, ECF No. 80, 81, 101, 114, are hereby DENIED AS MOOT.

DONE AND ORDERED at Fort Lauderdale, Florida this 12th day of February 2014.

_____

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

All Counsel of Record